# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DUSTIN FITZGERALD, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 08-1534 |
| BUFFALO & PITTSBURGH RAILROAD, INC., | ) Judge Nora Barry Fischer<br>) Magistrate Judge Cathy Bissoon |
| Defendant. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that Defendant Buffalo & Pittsburgh Railroad, Inc.'s Motion for Summary Judgment (Doc. 38) be denied, as discussed below.

### II.  REPORT

**BACKGROUND**

Plaintiff, Dustin Fitzgerald, alleges that he suffered injuries to his back, neck, cervical spine, and elbows as a result of his work while employed by Defendant Buffalo & Pittsburgh Railroad, Inc. See Am. Compl. (Doc. 21). Specifically, Plaintiff alleges that his injuries resulted from repetitively using a sledgehammer to hammer pins and bushings on old locomotives. Id. Plaintiff alleges that various acts of negligence by Defendant caused Plaintiff's injuries, and that Defendant is therefore liable to Plaintiff under the Federal Employers Liability Act ("FELA"), 45 U.S.C. §§ 51-60. Id. at ¶¶ 16-17.

Although Plaintiff's position is not entirely clear from its brief in response to Defendant's summary judgment motion, Plaintiff's allegations appear to support two general theories of negligence:  (1) Defendant failed to provide a reasonably safe work environment by providing an

improper job method, failing to provide proper tools and equipment, failing to comply with OSHA regulations, and failing to properly instruct and supervise Plaintiff; and (2) Defendant negligently assigned Plaintiff to a job task that Plaintiff was not physically qualified to do. See Pl.'s Br. at 1-4 (Doc. 43); Am. Compl. ¶ 16 (Doc. 21).

Defendant's primary arguments in its summary judgment motion relate to the admissibility of the testimony of Plaintiff's witnesses Dr. Andres, Dr. Jetzer, and Dr. Semeyn. Defendant argues that the testimony of those witnesses should be excluded, and that without that testimony, there is no evidence that Defendant failed to provide a reasonably safe workplace or that Plaintiff's work was the proximate cause of Plaintiff's injuries. Defendant argues that summary judgment therefore should be granted in its favor. Mot. for Summary Judgment (Doc. 38).

## ANALYSIS

### A. Exclusion of Testimony of Plaintiff's Witnesses

Expert witness testimony is permitted under Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Court of Appeals for the Third Circuit has interpreted Rule 702 to have three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d

Cir. 2008). With respect to the second requirement, "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." Id. at 244 (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994)). The standard for "reliability is lower than the merits standard of correctness," id. at 247 (quoting Paoli, 35 F.3d at 744), and "Rule 702 . . . has a liberal policy of admissibility," id. at 243 (quoting Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997)).

1. Dr. Andres

Plaintiff has proffered Robert O. Andres, Ph.D., CPE as an ergonomics and biomechanics expert to testify regarding ergonomic risk factors presented by Plaintiff's job tasks and Defendant's alleged failure to provide a reasonable safety and health program that met standard industry work practices.

To develop his opinions, Dr. Andres reviewed discovery responses and deposition testimony, medical records, railroad industry materials, ergonomics publications, and Defendant's documents. Andres Report at 3-5 (Doc. 42-13 at 3-5). Dr. Andres also examined the locomotive trucks on which Plaintiff worked, and observed Plaintiff demonstrating the motions he used to swing sledgehammers while working for Defendant. Id. at 36-41 (Doc. 42-14 at 11-16).

Using this information, Dr. Andres conducted a Rapid Upper Limb Assessment ("RULA") to conclude that Plaintiff's job tasks presented ergonomic risks that should have been addressed by Defendant. See id. at 42-43 (Doc. 42-14 at 17-18). Dr. Andres then summarized safety management principles, assessed Defendant's management of Plaintiff's job tasks, and concluded that Defendant failed to follow safety management principles "because they did not engineer out the exposure of Mr. Fitzgerald to repeated and prolonged use of sledgehammers to remove and install pins and bushing [sic] on the old trucks prior to his developing

musculoskeletal disorders that required treatment, nor did they guard against the exposure or warn Mr. Fitzgerald about the hazard and how to avoid exposure to it." Id. at 43-48 (Doc. 42-14 at 18-23).

Defendant makes two basic arguments for why Dr. Andres's testimony should be excluded. First, Defendant argues that Dr. Andres's opinion is not based on sufficient facts and data because Dr. Andres failed to provide evidence of the frequency with which Mr. Fitzgerald performed his job and failed to take any measurements of the forces exerted on Plaintiff or anyone else performing the specific job tasks performed by Plaintiff. See Def.'s Br. at 5-8. Second, Defendant argues that "Dr. Andres's opinions that [Defendant] did not have ergonomics or medical management programs are irrelevant because there is no duty under FELA to implement such programs." Id. at 8. Defendant does not challenge Dr. Andres's qualification as an expert, does not object to Dr. Andres's use of RULA to analyze ergonomic risks presented by Plaintiff's job tasks, and does not object to Dr. Andres's assessment of safety management principles.[1]

### a. Dr. Andres's Opinions are Based on Sufficient Facts and Data

Defendant correctly notes that Dr. Andres did not measure the forces exerted on Plaintiff's body, or any other worker's body, when using a sledgehammer to perform Plaintiff's job tasks. Andres Dep. at 90:12-17 (Doc. 42-17 at 40), 111:19 – 112:3 (Doc. 42-18 at 11-12). Dr. Andres also did not know exactly how frequently Plaintiff used a sledgehammer or how much break time Plaintiff took between sledgehammer strikes. Id. at 112:4 – 113:7 (Doc. 42-18 at 12-13). Dr. Andres did not observe Plaintiff or any other worker performing Plaintiff's

---

[1] Defendant also argues that Dr. Andres "failed to use a reliable methodology," and that "none of Dr. Andres' opinions would assist the jury." Def.'s Br. at 6, 8. While Defendant therefore appears to invoke various aspects of Rule 702, all of Defendant's arguments are based on whether Dr. Andres based his opinion on sufficient facts or data; specifically, Defendant argues that Dr. Andres' opinions do not relate to Plaintiff's specific job tasks.

specific job task related to refurbishing old locomotive trucks.  Id. at 67:22 – 70:17 (Doc. 42-17 at 17-20).

But Dr. Andres's opinions nonetheless are based on sufficient facts and data.  As Dr. Andres explained, he could not measure the forces exerted on Plaintiff's body during Plaintiff's work and he did not know exactly how frequently Plaintiff used a sledgehammer, because Dr. Andres could not go back in time to take those measurements or observe Plaintiff's work.  Id. at 89:19 – 90:11 (Doc. 42-17 at 39-40), 112:4 – 113:7 (Doc. 42-18 at 12-13).  Further, Dr. Andres's opinion does not depend on the precise magnitude of forces imposed by swinging a sledgehammer or the precise frequency of sledgehammer swings.  As explained in Dr. Andres's Report, the RULA analysis does not quantify forces involved with certain job tasks, but serves as a "quick screen" to prioritize what job tasks should be investigated further with respect to ergonomic risks.  Andres Report at 7 (Doc. 42-13 at 7).

Dr. Andres also testified that he did not need to measure forces because he relied on previous research.  Andres Dep. at 111:19 – 112:3 (Doc. 42-18 at 11-12).  Dr. Andres explained in his report that, based on previous research, striking metal with a sledgehammer creates vibration and forces that affect the lateral epicondyle of the elbow.  Id. at 41-42 (Doc. 42-14 at 16-17).  According to some of that research:  "Percussive metal-working tools generate some of the highest magnitudes of hand-transmitted vibration.  They are also responsible for some of the highest rates of the incidence of disorders, the greatest severity of disorders and the widest variety of disorders."  Andres Report at 41 (Doc. 42-14 at 16) (quoting M.J. Griffin, Handbook of Human Vibration (1990)).

While Dr. Andres is not aware of any publications specifically linking railroad work to the spinal injuries cervical stenosis and cervical degenerative disc disease, Andres Dep. at

107:13-19 (Doc. 42-18 at 7), Dr. Andres explained that the trapezius muscles involved in shoulder motions associated with swinging a sledgehammer create compressive forces on the cervical discs of the neck. Andres Report at 42 (Doc. 42-14 at 17). Dr. Andres, an expert in ergonomics and biomechanics, could reasonably conclude that swinging a sledgehammer exerts compressive forces on the neck. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 593-94 (1993) (noting that not all theories incorporated into an expert's opinion must be subjected to peer review and publication). Further, Plaintiff submitted a declaration from Dr. Andres (Doc. 42-12) in response to Defendant's summary judgment motion. Dr. Andres's Declaration describes published studies indicating that "high levels of shoulder force exertion create high levels of compression" on the spine. Andres Decl. at 3, ¶ 2 (Doc. 42-12). Defendant did not file a reply brief, so Defendant apparently does not object to Dr. Andres's characterizations of the published studies.

With respect to the frequency of sledgehammer use, Defendant ignores Dr. Andres's reliance on Plaintiff's testimony. Andres Dep. at 112:4-17 (Doc. 42-8 at 12); Andres Report at 36 (Doc. 42-14 at 11). Dr. Andres specifically noted in his report that it took 30-40 hits with a sledgehammer to remove a pin from the old locomotive trucks on which Plaintiff worked. Andres Report at 36 (Doc. 42-14 at 11).

With respect to Defendant's argument that Dr. Andres did not observe anyone performing Plaintiff's job functions, Defendant ignores the facts that Dr. Andres read about Plaintiff's job tasks and observed Plaintiff imitating the motions he would have made to swing sledgehammers during his work for Defendant.[2] Andres Dep. at 65:4-12, 86:14-23, 88:4-7 (Doc.

---

[2] While not entirely clear from the record, it appears that Plaintiff's former job tasks are no longer being done at Defendant's work site, which prevented Dr. Andres from observing

42-17 at 15, 36, 38); Andres Report at 40-41 (Doc. 42-14 at 15-16). This information, particularly in light of Dr. Andres's expertise in ergonomics and prior experiences observing railroad workers using sledgehammers, constitutes sufficient facts and data for Dr. Andres to conduct his RULA analysis assessing the ergonomic risks posed by Plaintiff's specific job tasks.

Defendant relies on <u>Pretter v. Metro North Commuter Railroad Co.</u>, 206 F. Supp. 2d 601 (S.D.N.Y. 2002), <u>Magdaleno v. Burlington Northern Railroad Co.</u>, 5 F. Supp. 2d 899 (D. Colo. 1998), and <u>Doty v. Illinois Central Railroad Co.</u>, 162 F.3d 460 (7th Cir. 1998), in support of its contention that Dr. Andres's opinions are unreliable. None of those cases support Defendant's position. The courts in both <u>Pretter</u> and <u>Magdaleno</u> faulted expert opinions that failed to correlate specific job functions with carpal tunnel syndrome. <u>Pretter</u>, 206 F. Supp. 2d at 603-04; <u>Magdaleno</u>, 5 F. Supp. 2d at 905. As explained above, Dr. Andres provided sufficient facts and data to correlate the high forces exerted when using a sledgehammer to the elbow and neck injuries suffered by Plaintiff. <u>Pretter</u> and <u>Magdaleno</u> therefore are inapposite. <u>Doty</u> is inapposite because the court in <u>Doty</u> did not determine the issue of admissibility of expert testimony. <u>See</u> <u>Doty</u>, 162 F.3d at 462-63.

Dr. Andres relied of sufficient facts and data by reviewing discovery responses and deposition testimony, medical records, railroad industry materials, ergonomics publications, and Defendant's documents, by examining the locomotive trucks on which Plaintiff worked, and by observing Plaintiff demonstrating the motions he used to swing sledgehammers while working for Defendant. <u>See</u> <u>Powers v. Union Pacific R.R. Co.</u>, 9:07-cv-212, 2009 WL 734707, at *2 (E.D. Tex. Mar. 19, 2009) (finding under similar circumstances that Dr. Andres's opinions were based on sufficient facts and data).

---

    other workers performing those job tasks. <u>See</u> Andres Dep. at 64:1 – 65:3 (Doc. 42-17 at 14-15).

### b. Dr. Andres's Opinions are Relevant

Defendant asserts that "Dr. Andres' opinions that [Defendant] did not have ergonomics or medical management programs are irrelevant because there is no duty under FELA to implement such programs." Def.'s Br. at 8 (Doc. 40 at 8). But the negligence standard under FELA does not allow for such a blanket assertion. Negligence under FELA depends upon "what a reasonable and prudent person would have done under the circumstances." Stone v. New York, C., & St. L.R. Co., 344 U.S. 407, 409 (1953) (citing Wilkerson v. McCarthy, 336 U.S. 53, 61 (1949)). Dr. Andres's opinions are relevant to whether a "reasonable and prudent person" would have implemented certain ergonomics or medical management programs under the circumstances. In his report, Dr. Andres describes various publications regarding worksite ergonomic analysis and ergonomics programs. Andres Report at 5-8 (Doc. 42-13 at 5-8). According to Dr. Andres, the Occupational Safety and Health Administration, the National Safety Council, the National Institutes of Safety and Health, the Association of American Railroads, and the U.S. General Accounting Office all have published guidelines or studies regarding implementation of workplace ergonomics programs. Id. at 7-8. Dr. Andres compared Defendant's handling of Plaintiff's job tasks with those published guidelines, and concluded that Defendant failed to follow established safety management principles. See id. at 43-49.

Defendant does not challenge the validity of those published guidelines or Dr. Andres's comparison of the facts of this case to those guidelines, and merely asserts that ergonomic and medical management programs are irrelevant. Defendant relies on Williams v. Burlington Northern & Santa Fe Railway Co., 13 F. Supp. 2d 1125 (D. Kan. 1998), and Wilcox v. CSX Transportation, Inc., No. 1:05-cv-107, 2007 WL 1576708 (N.D. Ind. May 30, 2007), but in neither case did the court find that there is never a duty under FELA to implement an ergonomics or medical management program. In Williams, the court found no breach of duty by the

defendant railroad, because the plaintiff cited no evidence that the defendant "knew or should have known that any specific tools which he used were unsafe or that any work tasks which he performed were unsafe." 13 F. Supp. 2d at 1129. Dr. Andres's opinions here address whether Defendant "should have known" that Plaintiff's job tasks were unsafe. Williams therefore is inapplicable. In Wilcox, the court excluded Dr. Andres's opinion regarding medical management and ergonomic programs because there was no evidence that the lack of such a program proximately caused the plaintiff's injuries. 2007 WL 1576708, at *15. While Defendant's motion mentions the issue of proximate causation, Defendant does not address this issue in its brief. Wilcox thus also is inapposite. Dr. Andres's opinions are relevant to whether a reasonable and prudent employer in Defendant's position would have implemented ergonomics or medical management programs for workers required to use sledgehammers to hammer pins and bushings on old locomotive trucks.

    2. Dr. Jetzer

Plaintiff has proffered Dr. Thomas C. Jetzer, M.D., MPH as an expert to testify regarding whether Plaintiff's job contributed to Plaintiff's injuries.

Defendant argues that Dr. Jetzer's testimony should be excluded because it is not based on sufficient facts and data.[3] Specifically, Defendant argues that Dr. Jetzer did not examine Plaintiff, was never at Plaintiff's worksite, did not review any tools used by Plaintiff, did not conduct any epidemiological research, did not measure any forces relating to Plaintiff's sledgehammer use, did not investigate Plaintiff's method of using a sledgehammer, and did not assess what reduction in the length of time or number of repetitions of swinging the

---

[3] Defendant makes the conclusory assertion that Dr. Jetzer's opinions are "not based on the scientific method," Def.'s Br. at 9 (Doc. 40 at 9), but does specify how Dr. Jetzer's methodology was allegedly flawed. Defendant's arguments instead relate to whether Dr. Jetzer relied on sufficient facts and data. See id.

sledgehammer would be needed to ensure that Plaintiff did not develop his injuries. Def.'s Br. at 9-10 (Doc. 40 at 9-10).

Dr. Jetzer nonetheless relied on sufficient facts and data by relying upon Plaintiff's medical records, Plaintiff's deposition testimony, and Dr. Andres's description of Plaintiff's job. Jetzer Report at 1 (Doc. 42-9 at 1). Based on this information and his experience as an occupational medicine consultant, Dr. Jetzer concluded that Plaintiff's work for Defendant contributed to Plaintiff's epicondylitis and spine disease. Jetzer Report at 4 (Doc. 42-9 at 4). Dr. Jetzer linked Plaintiff's specific job task of using a sledgehammer to Plaintiff's elbow and spine injuries. Dr. Jetzer explained that using a sledgehammer creates shock forces that are "transmitted up the arm and resonates with various parts of the body, particularly in the upper extremity and neck." Jetzer Report at 3 (Doc. 42-9 at 3). Dr. Jetzer explained that sledgehammer use creates stresses on the lateral epicondyle, and that he often has seen individuals that develop lateral epicondylitis as a result of work similar to Plaintiff's work. Id. Dr. Jetzer also explained that the progression of Plaintiff's spine disease "developed far faster than one would expect simply from the aging process." Id. In Dr. Jetzer's opinion, the awkward forces and torqueing required in swinging a sledgehammer led to accelerated degeneration of Plaintiff's spine condition. Id. Dr. Jetzer explained that, based on a review of Plaintiff's medical records, Plaintiff's rigorous and heavy work for Defendant is the only explanation for Plaintiff's premature development of spine disease. Id.

With respect to Defendant's objection that Dr. Jetzer did not measure the forces relating to Plaintiff's sledgehammer use and did not assess what reduction in the length of time or number of repetitions of swinging the sledgehammer would be needed to ensure that Plaintiff did not develop his injuries, Dr. Jetzer explained that his opinion did not depend on the frequency of

sledgehammer use. Dr. Jetzer explained that, based on Plaintiff's history of back and neck problems, any sledgehammer use would be detrimental:

> But I mean the point is it's not the question of how many, you know, whether it's, you know, five blows or ten blows. If he has a bad back or neck, which I think has been well documented, he's not going to tolerate that type of work. And – and if, you know, if this person would come to me in preplacement and I saw this history of back problems I'd say he's not a good guy to put on the sledgehammer.

Jetzer Dep. at 46:17 – 47:1 (Doc. 42-8 at 12). Because Dr. Jetzer relied on sufficient facts and data, his testimony should not be excluded.[4]

### 3. Dr. Semeyn

Defendant also asserts, without any citation to the record, that Dr. Semeyn "did no investigation, research, and conducted no objective testing to support his opinions." Def.'s Br. at 11 (Doc. 40 at 11). Defendant argues that Dr. Semeyn's opinion that use of a sledgehammer worsened Plaintiff's condition therefore is inadmissible. Id.

Dr. Semeyn is Plaintiff's family doctor. See Pl.'s Br. at 8 (Doc. 43 at 8). As Plaintiff's treating doctor, Dr. Semeyn diagnosed Plaintiff with degenerative disc disease in the lower back and neck. Semeyn Dep. at 27:24 – 28:11 (Doc. 42-6 at 8). Dr. Semeyn testified that while he did not know exactly how many times a day Plaintiff swung a sledgehammer, and could not know for sure if Plaintiff's degenerative disc disease was caused by sledgehammer use, "using a sledgehammer daily when you already have the disease can exacerbate your condition." Id. at

---

[4] Defendant relies on Williams, in which the court found an expert report from Dr. Jetzer insufficient to defeat summary judgment. 13 F. Supp. 2d at 1130-31. In Williams, Dr. Jetzer's report noted that he could not give a "definitive opinion" on causation without additional information, including an "ergonomic assessment." Id. at 1131. Thus, Dr. Jetzer's own report indicated a lack of sufficient information to support a finding of causation. Id. No such circumstances exist here, and Defendant has not identified any evidence that Dr. Jetzer believes he had insufficient information to form an opinion based on the circumstances of this case.

27:12 – 31:8 (Doc. 42-6 at 8-9). Defendant has not articulated any reason why Dr. Semeyn's testimony is inadmissible. As Plaintiff's treating doctor, Dr. Semeyn may testify regarding his "treatment, examination, and diagnosis" of Plaintiff. Frederick v. Hanna, No. 05-cv-514, 2007 WL 853480, at *6 (W.D. Pa. Mar. 16, 2007) (Ambrose, C.J.).

### B. Application of FELA

Under FELA, railroads are liable in damages to any employee injured as a result of the railroad's negligence. 45 U.S.C. § 51. Negligence under FELA depends upon "what a reasonable and prudent person would have done under the circumstances." Stone, 344 U.S. at 409. An employer may be negligent under FELA for failing "to provide its employees with a reasonably safe place to work." Pehowic v. Erie Lackawanna R.R. Co., 430 F.2d 697, 699 (3d Cir. 1970) (citing Shenker v. Baltimore & O.R. Co., 374 U.S. 1 (1963)). An employer also may be negligent if "the employer, knowing of an employee's partial disability, nevertheless assigns him to unsuitable work." Kichline v. Consol. Rail Corp., 800 F.2d 356, 361 (3d Cir. 1986) (citing Fletcher v. Union Pac. R.R. Co., 621 F.2d 902 (8th Cir. 1980); Emmons v. S. Pac. Transp. Co., 701 F.2d 1112 (5th Cir. 1983)).

With respect to causation, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 506 (1957). Liability exists under FELA whether the employer's negligence caused an injury or aggravated a preexisting physical condition. Kichline, 800 F.2d at 361. FELA cases may be withdrawn from a jury's consideration "only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee." Pehowic, 430 F.2d at 699-700.

Defendant asserts that summary judgment should be granted in Defendant's favor because "Plaintiff has not met his burden of proof that [Defendant] failed to provide a reasonably safe place to work and reasonably safe tools with which to work, and because Plaintiff cannot satisfy the requisite proximate causation element." Mot. for Summary Judgment at 1 (Doc. 38). Defendant's brief does not explain Defendant's position regarding causation, but presumably Defendant is arguing that there is no evidence of causation without the testimony of Dr. Jetzer and Dr. Semeyn. As explained above, Dr. Jetzer and Dr. Semeyn's testimony should not be excluded.

With respect to Defendant's argument that Plaintiff has not met his burden of proof that Defendant failed to provide a reasonably safe place to work, Defendant appears to argue that there is no evidence to support Plaintiff's claims if the testimony of Dr. Andres, Dr. Jetzer, and Dr. Semeyn is excluded, and that Defendant is not negligent for failing to obtain an alternate tool (the "port-o-power") to make Plaintiff's job easier. Defendant correctly notes that an employer is not necessarily required to "furnish the employee with the latest, best or most perfect appliances with which to work." Atlantic Coast Line R. Co. v. Dixon, 189 F.2d 525, 527 (5th Cir. 1951); see Def.'s Br. at 11 (Doc. 40). But this does not mean that the availability of alternative, safer tools is irrelevant to the issue of negligence. The proper inquiry is "what a reasonable and prudent person would have done under the circumstances." Stone, 344 U.S. at 409.

In Stone, the plaintiff was injured while removing railroad ties using a certain method as instructed by the railroad's straw boss. The Court found that the availability of three alternative methods of removing railroad ties was part of the evidence to be considered by the jury when determining negligence under FELA: "Whether the straw boss in light of the risks should have

used another or different method to remove the tie or failing to do so was culpable is the issue. To us it appears to be a debatable issue on which fair-minded men would differ." Id. Thus, the availability of alternative methods was part of the overall circumstances for the jury to appraise. See id.

Similarly in the present case, the availability of the port-o-power is part of the overall circumstances that must be considered in determining whether Defendant was negligent. Plaintiff has presented evidence, in the form of Dr. Andres's opinion, that repetitive swinging of sledgehammers presented ergonomic risks that should have been investigated by Defendant and that Defendant failed to follow safety management principles by failing to address those risks by implementing engineering or administrative controls to reduce exposure to those risks, and by failing to train Plaintiff on how to reduce exposure to those risks. A jury will have to appraise the circumstances to determine whether a "reasonable and prudent" employer in Defendant's position would have implemented engineering or administrative controls (e.g., providing a port-o-power), and/or training programs for the assigned job task of removing pins and bushings from old locomotive trucks. Because this is not one of "those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee," Defendant's motion for summary judgment should be denied. Pehowic, 430 F.2d at 699-700.[5]

---

[5] Defendant relies on several cases that are not binding on this Court. See Def.'s Br. at 11-13. Further, those cases are distinguishable. The courts in both Soto v. Southern Pacific Transportation Co., 644 F.2d 1147 (5th Cir. 1981), and McKennon v. CSX Transportation, Inc., 897 F. Supp. 1024, 1026-27 (M.D. Tenn. 1995), found insufficient evidence of negligence despite a railroad's failure to adopt alternative work methods. In both cases, the plaintiff's own testimony indicated that the work method used was reasonably safe. No such testimony is present in this case. In Stillman v. Norfolk & Western Railway Co., 811 F.2d 834 (4th Cir. 1987), a jury returned a verdict in favor of the defendant railroad. The court found that it was within the district court's discretion to exclude testimony regarding safer,

**CONCLUSION**

For all of the reasons stated above, Defendant Buffalo & Pittsburgh Railroad, Inc.'s Motion for Summary Judgment (Doc. 38) should be denied.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by March 24, 2011. Responses to objections are due by April 11, 2011.

s/ Cathy Bissoon<br>
Cathy Bissoon<br>
U.S. Magistrate Judge

March 7, 2011

cc (via email):

All attorneys of record.

---

alternative job methods because "the question the jury had to decide was whether the Railroad had exercised reasonable care for the safety of Stillman, not whether the Railroad could have employed a safer method . . . ." Id. at 838. The court did not find that alternative work methods are never relevant.